*790 OPINION.
Van Fossan:
Under the first assignment of error the petitioners contend that there should be deducted from their respective incomes for the years in question a prorated share of the sum of $8,523.50, which is a part of the fees paid by the estate of A. C. Bilicke for legal services as reported by the executors of that estate in their fiduciary return for the year 1922. The petitioners concede that the disallowance by the Commissioner of Internal Revenue of $11,813 of the amount paid as attorney fees by the estate was in accordance with law, but claim that the balance, namely, $8,523.50, which was paid during 1922 for special, necessary legal services rendered to the estate, should not have been disallowed.
The evidence in support of this issue is meager. It is clear that the amount of the fees in question was included as a disbursement in an accounting filed as of December 31, 1921, by the executors of the estate of A. C. Bilicke, deceased. It is clear too, that the fees were paid by the estate to its attorneys in January, 1922, and that the amount of the fees so paid was disallowed by the Commissioner of Internal Revenue as a necessary expense of the estate for the year 1922. There is also evidence tending to prove that the fees were paid by the estate for special and necessary legal services not connected with the ordinary administration of the estate. But the evidence discloses no reason why any part of a payment made by the estate of A. C. Bilicke and disallowed by the Commissioner of Im ternal Revenue as a necessary expense of the estate for the year 1922 should now be deducted from the respective incomes of these petitioners. The first issue must, therefore, be decided in favor of the respondent.
The principal question for our consideration is whether the petitioners sold their property to the Fifth and Broadway Investment Co. for cash or its equivalent, realizing a profit thereby, or whether *791 they exchanged their property for shares of the capital stock of that corporation in an amount proportionate to their respective interests in the property transferred.
We have held in various proceedings that tax liability must be determined by what actually occurred, and not by what might have occurred or ought to have taken place. Anna M. Harkness, 1 B. T. A. 127; R. V. Board, 14 B. T. A. 374; William H. Mullins, 14 B. T. A. 426; Hans Pederson, 14 B. T. A. 1089. We think that this principle is basic to the' solution of the question now under consideration. Therefore, in accordance, with the necessary implications of the principle, we must look beyond forms and procedure, beyond the court orders and the permits set out in the statement of facts, to the substance of the transactions giving rise to the controversy presented by these proceedings.
The proof shows that the petitioners were beneficiaries under the last will and testament of A. 0. Bilicke, deceased; that they were residents of California; and that their property was located in that State. It is further shown that by certain statutory provisions the' guardian of the two minor petitioners was prohibited from executing a desirable and advantageous lease of certain premises in which each of the minors had an undivided two-ninths interest, the two adult petitioners having the remaining five-ninths interest.' Theretofore the Fifth and Broadway Investment ‘Co. had been organized under the laws of the State of California by representatives of the Bilicke family for the purpose of holding, leasing and operating the Bilicke properties as an undivided whole and had issued to members of the Bilicke family 7,560 shares of its capital stock in exchange for certain property appraised at $756,000. The parties in interest, namely, these petitioners, therefore selected the corporation as the proper legal entity to execute the aforesaid lease. It was thereupon agreed by the parties that the estate of A. C. Bilicke, deceased, should be distributed; that the petitioners should transfer to the Fifth and Broadway Co. all of the property located in the State of California to which the petitioners became entitled under the last will of A. C. Bilicke, and that the corporation should thereupon issue to each of the petitioners, in exchange for such property, shares of its capital stock in an amount in proportion to their respective interests in the property transferred. It should be observed at this point that the proof shows that this agreement between the parties was actually carried into effect. Ultimately, the property of the petitioners was transferred to the Fifth and Broadway Investment Co., which thereupon issued shares of its stock to the petitioners in proportion to their respective interests in the property. The property was entered upon the books of the corporation at the valuation fixed by *792 court appraisers and no cash was received by any of the petitioners as a consideration for the transfer. The transaction, therefore, is characterized by all the indicia of an exchange of property for stock in a corporation.
Although it is conceded by the respondent that no cash was actually paid to the petitioners by the corporation, nevertheless it is urged on the respondent’s behalf that the orders of the Superior Court of Los Angeles County, California, referred to in the statement of facts, the two permits issued by the Commissioner of Corporations of the State of California to the Fifth and Broadway Investment Co. on February 3, 1921, and June 5, 1922, respectively, together with the admitted fact that the adult petitioners transferred their property to the corporation on the same basis as the minors, are conclusive evidence that the petitioners are chargeable with the receipt of cash or its equivalent in the amount of the appraised value of the property which was transferred to the corporation by them.
In our opinion this contention is not well founded. It is apparent that the proceedings resulting in the orders of the court approving an alleged sale of the property of the minor petitioners were deemed necessary for the reason that under the statutes of California no disposition of the property of her wards could be made by the guardian of the minors without the approval of the court and that any such disposition must be, technically, under the provisions of the statute, a sale for cash. It is also apparent that no attempt was made to deceive the court as to the actual nature of the transaction to be entered into by the corporation, by the guardian of the minors and by the adult petitioners alike. As a matter of fact and law the adult petitioners were not bound by the orders of the court with reference to the property of the minors. Also it appears from the evidence that the guardian of the minors neither intended to, nor did comply with the orders of the court with respect to the sale of the minors’ property for cash, but on the contrary, executed and delivered transfers of the property to the corporation without the receipt of cash. If there was a violation of the orders of the court on the part of the guardian of the minors, such violation may be a matter of concern to the court whose orders were so violated, but we are concerned only in determining what actually occurred.
• This is also true of the permits of February 3, 1921, and June 5, 1922, issued to the Fifth and Broadway Investment Co. by the Commissioner of Corporations of the State of California. As a matter of fact, the books of the corporation and other evidence indicate clearly that the stock of the company was not sold for cash, with the exception of three shares issued to the three persons who organized the company and who were for a time its directors. On *793 the contrary, more than 25,000 shares of the 30,000 authorized shares were issued directly to the petitioners immediately upon the said transfer of their property in proportion to their interest in the property. The par value of these shares was the same in amount as the total appraised value of the personal and real property transferred. Therefore, when the transactions in question were completed the corporation had real and personal property equal in value to the par value of the stock issued and the members of the Bilicke family had corporate stock equal in par value to the appraised value of their respective interests in the property transferred.
On the facts, therefore, we hold that the transfer of the property in question was not a sale for cash, but was an exchange of the property for shares of the Fifth and Broadway Investment Co.
The following provisions of section 202 of the Revenue Act of 1921 are, therefore, applicable.
Sec. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property, except that—
*******
(c) For the purposes of this title, on an exchange of property, real, personal, or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—
*******
(3) When (A) a person transfers any property, real, personal or mixed, to a corporation and immediately after the transfer is in control of such corporation, or (B) two or more persons transfer any such property to a corporation, and immediately after the transfer are in control of such corporation, and the amounts of stock, securities, or both, received by such persons are in substantially the same proportion as their interests in the property before such transfer. For the purposes of this paragraph, a person is, or two or more persons are, “ in control ” of a corporation when owning at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.
Whether or not at a given time a security has a “ readily realizable market value ” is, in our opinion, a question of fact. In the case of Andrew B. C. Dohrmann, 19 B. T. A. 507, we held that whether or not property has “ a fair market value ” at a given date within the meaning of that phrase as used in section 202(b) of the Revenue Act of 1918 “is a question of fact to be determined from all the evidence.” We think our views expressed in that case are pertinent to the question whether or not property has a “ readily realizable market value” under the provisions of section 202(c) of the Act of 1921, and we have found as a fact in these proceedings that the minority *794 interests in the Fifth and Broadway Investment Co. held by each of these petitioners did not have a “ readily realizable market value ” at the time of the acquisition of the stock by the respective petitioners in 1922. Moreover, we have found as a fact that the amount of the stock of the Fifth and Broadway Investment Co. received by the respective petitioners was substantially in the same proportion as their interest in the property transferred and that immediately after the transfer they were in control of the said corporation, that is, they held more than 80 per cent of the voting stock which was the only class of stock of the corporation which had been issued. It follows that under the provisions of section 202(c) and (c)(3) no gain or loss may be predicated upon the transactions in question in these proceedings. We therefore hold that the transactions in question were exchanges of property for stock from which no taxable gain was derived.
In view of the conclusion we have reached with respect to the principal issue, it is unnecessary to discuss the other assignments of error.
Reviewed by the Board.

Decision mil be entered v/nder Bule 50.